This is a civil action for actionable negligence brought by plaintiff against the defendant. *Page 649 
Martha DeLaney, a school girl in the 10th grade, about 14 years of age, on the morning of 26 November, 1924, about 9 o'clock, with the permission of her father, J. L. DeLaney, was driving to school in his Essex car with a companion, Martha Dulin. She had no city license; she had been driving a car about one year to a year and a half, with her father's permission, around the city. She was coming south down Cecil Street, between 7th and Elizabeth Avenue. Her description of the occurrence is as follows: "When I came to Fifth Street I was traveling between 8 and 10 miles an hour. I was watching the road. I did not see the defendant's truck until I had gotten almost in the month of Fifth Street; it was coming down Fifth Street, going west. Fifth Street runs down grade a good deal after it enters Cecil. I would say the truck was running between 15 and 20 miles an hour. I was on the right side of the street about four feet from the curb. Before I got to the corner I blew the horn four times and when I got there the truck was coming down. It did not stop, but kept on coming and I saw if I stopped he would hit me on the side and knock me down an embankment at the back of the school, so I speeded up to get past the car on the right before it struck me, but it struck me anyway. I was curving to the right. The car swerved to the right on my side and I tried to make the curve with the truck. Fifth Street stops at Cecil. There was a high embankment on the east side of Cecil Street, and you can't see a car coming down Fifth Street for that embankment. On the far side of Cecil there is a bank dropping about 10 feet from the street. The truck struck me on the front fender and knocked me up on the curbing and I hit the telephone post. It tore up the car in which I was riding, turned it over on the side after it struck the post. The truck struck the left front fender of my car on the side near the front. The car was taken to the motor company. I went to the hospital. His car was coming down Fifth Street and I turned to the left at the intersection." This testimony was corroborated by Martha Dulin, who was riding in the car with her.
The defendant, in its answer, denied negligence and set up the plea of contributory negligence.
The defendant introduced no evidence. The issues submitted to the jury were the usual ones in such cases — negligence, contributory negligence and damages. The jury found the defendant negligent, the plaintiff not guilty of contributory negligence, and assessed damages.
The first material assignment of error by defendant is to the following: "Q. Do you know whether she (plaintiff's daughter) is a careful or careless driver?" This assignment of error must be considered in the light of what had occurred before in the trial on cross-examination of J. L. DeLaney by the defendant to impeach and discredit his testimony and lessen its value before the jury. He was asked certain questions *Page 650 
and his answers were: "I knew that was a violation of the law. I am an attorney. I have been to the Legislature, a State Senator. I have also been recorder pro tem. I have tried people down there for violating traffic ordinances, as judge, and I have punished them, and I knew that this was a violation of the law to let my daughter drive alone on the streets when she was not but 14 years old."
On redirect-examination, the testimony complained of was brought out. This testimony was not offered as substantive, but it was in answer to the impeachment of the witness, DeLaney, for allowing his daughter under 16 years of age to operate a motor vehicle, with his knowledge and consent, contrary to the traffic law. No request by defendant was prayed to limit its scope. It was collateral to the main issue. In fact, the evidence of the two witnesses as to how the collision occurred was not contradicted by defendant.
The decisions cited by defendant are not applicable here, conceding, but not deciding, we do not think it reversible or prejudicial error.
Complaint is also made by defendant that the court in setting forth the contentions of plaintiff gave point to the error and this testimony was referred to: "She was young in years, under the age limit required by law, yet she knew how to drive and was an experienced and careful driver." It does not appear that exception was made at the time. It is well established by the decisions of this Court that if no objection is made at the time it is waived. S. v. Sinodis, 189 N.C. p. 565.
It is further contended that the court below in the charge upon negligence violated the prudent man rule and cites this excerpt from the charge: "There are a number of definitions as to negligence. Probably as easy and simple a definition as any I can think of at the moment is that where a man does a thing he ought not to do or leaves undone a thing he ought to do, which doing or leaving undone brings about injury to another. That is one definition and as far as I know about as simple to apply to this case as any I can think of."
In Lea v. Utilities Co., 175 N.C. at p. 463, the Court said: "In order to establish actionable negligence, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with a like duty; and second, that such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence and without which it could not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. Ramsbottom v. R. R., 138 N.C. 41." *Page 651 
In Hudson v. R. R., 176 N.C. p. 492, Allen, J., confirming the above rule, says: "To which we adhere, with the modification contained in Drum v.Miller, 135 N.C. 204, and many other cases, that it is not required that the particular injury should be foreseen, and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act."Hall v. Rinehart Dennis Co., post, 706; Boswell v. Hosiery Mills, 191 N.C. at p. 558; Moore v. Iron Works, 183 N.C. 438.
The extract from the charge, standing alone, might be subject to some criticism, but the court below, in continuity, stating other aspects of the law of the case, charged: "The law does not require a man to become an insurer or guarantor; what the law requires him to do is to exercise reasonable care in the operation of his automobile and due care is the better word, and due care means that care which an ordinary prudent person, surrounded and situated as the driver was there on that occasion would have exercised. . . . And if defendant's driver in the operation of his truck exercised that care which an ordinary prudent person surrounded and situated as he was at the time would have exercised, then he would not be guilty of any negligence. But if he failed to exercise such care, then you find that failure was the proximate cause of the injury to the plaintiff's car, then it would be your duty to answer the first issue `Yes.'"
We think these instructions as a whole substantially follow the law as laid down by this Court. The charge must be taken as a whole and not disconnectedly. Hanes v. Utilities Co., 191 N.C. at p. 20; Dulin v.Henderson-Gilmer Co., ante, 638.
On the question of contributory negligence: In regard to Martha DeLaney driving the car under 16 years of age, contrary to the law, the court charged: "As I said before, violation of the law is itself prima facie negligence, per se negligence, but it is not that negligence which constitutes liability unless it becomes a proximate cause of the injury. So, in this case, the court charges you if you find Miss DeLaney was under sixteen years of age and that she was driving the car, that was in violation of the law, and if you find that that violation was a proximate cause of the injury to the plaintiff's automobile, it would be your duty to answer the issue `Yes.'" This is sustained by abundant authority: Shepardv. R. R., 169 N.C. 239; Paul v. R. R., 170 N.C. 231; Zageir v. ExpressCo., 171 N.C. 692; Taylor v. Stewart, 172 N.C. 203; Hinton v. R. R.,172 N.C. 587; Graham v. Charlotte, 186 N.C. 649.
In Construction Co. v. R. R., 185 N.C. at p. 45, it is held: "When a trespass committed upon personal property results in an injury less than the destruction or deprivation of the property, or in an action *Page 652 
for a negligent injury to real property, the measure of damages is the reduced market value of the property proximately caused by the negligent act, and the rule generally adopted is to allow the plaintiff the difference between the market value of the property immediately before the injury occurred and the like value immediately after the injury is complete," citing authorities.
The correct and safe rule is the difference between the reasonable or fair market value of the automobile before and after the injury or damage. Ordinarily the value of the property damaged is to be determined as of the time and place of its damage or injury. Proof of its value within a reasonable time under the circumstances of the particular case, before and after the injury is competent. Newsom v. Cothrane, 185 N.C. p. 161; 8 R. C. L., 487-8-9.
If the questions complained of were objectionable, like the following: "Immediately after the wreck, what, in your opinion, was that car worth?" the witness cured it by his answer: "The market value had depreciated at least 50% in my opinion." The court also cured it in the charge: "Yet, in the market, the value of it in the market has been depreciated and that is the test, not what it is worth to Mr. DeLaney, not how long it would last, not how much strength it had, but what that automobile in the open market would have sold for immediately before this collision, put on the market and sold by a person under no obligations to sell and bought by a person under no obligations to buy; that is what is meant by its market value." The definition of market value is practically that laid down in R. R. v.Armfield, 167 N.C. 464. We think the court met fully the requirements of the law in the charge on damages. On the entire record we can find no prejudicial or reversible error. The facts of the collision were testified to by two witnesses, found to be credible by the jury, and defendant introduced no evidence to the contrary.
No error.